# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IDERLINA PERALTA PAGANURAN, et al.,

    Defendants.

Case No. 2:06-CR-0403-KJD-LRL

**ORDER**

Currently before the Court is Defendant Schejerezade A. Asprah's ("Asprah") Motion to Dismiss for Failure to Provide a Speedy Trial (#103), filed January 11, 2008, in which she contends that the Court should dismiss the Government's case against her if the Government requests another delay in these proceedings. The Government filed a Response (#116), on February 1, 2008, and Asprah filed a Reply (#124), on February 11, 2008.

**I. Background**

Defendant, Asprah is under indictment on one count of Conspiracy to Commit Money Laundering, a violation of 18 U.S.C. § 1956(h), and one count of Money Laundering, a violation of 18 U.S.C. § 1956(a)(3)(A)-(C), and § 2. The charges in this case stem from a sting operation involving Asprah and codefendants Iderlina Pagunuran ("Pagunuran"), Celestina Aguilar ("Aguilar"), and Emmanuel Aguilar ("Aguilar"), in which the Defendants are alleged to have conspired with one another to launder money they believed to be the proceeds of illegal narcotics transactions. Asprah's involvement in the alleged criminal scheme began when, in 2005, Koning, a Dutch citizen who had been working with the Drug Enforcement Administration ("DEA") intermittently for several years as an informant and who, at the time of the conspiracy, had been representing himself to others to be a drug dealer, complained to Asprah and her husband about

purported money laundering difficulties he was experiencing. Asprah, who had been friends with Koning for some time prior to this conversation and who was aware that Koning was a "drug dealer," volunteered to Koning that she knew someone who might be able to launder money for Koning. Shortly thereafter, Asprah set up a meeting between Koning and Asprah's former attorney, Pagunuran, on or about July 25, 2005, in Thailand, where Asprah was residing. Asprah also attended the meeting, during which she introduced Koning to Pagunuran, and the three discussed the money laundering scheme. Pagunuran provided her phone number and e-mail address to Koning for future use regarding the scheme, and Asprah separately provided her e-mail address to Koning for the same purpose.

Approximately three months later, Asprah traveled to Manila, Philippines, where a second meeting had been arranged between the parties. The meeting was attended by Asprah, Pagunuran, Koning, and another DEA informant ("CS-2") who, like Koning, was asked by the DEA to pose as a drug trafficker. By the end of the meeting, Asprah agreed in principle to participate in a money laundering transaction with the informants and further agreed to coordinate at a later time the logistics of the transaction, including the amount of money to be laundered and the fees to be paid to the Defendants. After numerous e-mails were exchanged between Asprah and Pagunuran, and Koning and CS-2, it was finally agreed that Pagunuran would launder $200,000 in "drug proceeds" in exchange for a 10 percent fee. Asprah also negotiated a 2 percent "finder's fee" for her efforts in selecting Pagunuran as a suitable money launderer and brokering the deal between Pagunuran and the informants.

In 2006, $200,000 in cash was delivered to Aguilar, Pagunuran's associate based in the United States. The money was picked up and counted in Las Vegas and was to be laundered to an account in Denmark. Of that amount, approximately $86,000 was successfully laundered to an undercover bank account. A commission of 10 percent of the total amount, or $20,000, was also pocketed by Pagunuran. The government believes that the remaining money was stolen by Aguilar, who remains a fugitive and is believed to be hiding in the Philippines.

In December 2006, Asprah and Pagunuran were charged in a two-count Indictment (#1) with conspiracy to commit money laundering and money laundering. On March 14, 2007, they, along with the two codefendants, were charged by a grand jury in a superseding indictment (#10). Shortly thereafter, in early 2007, Asprah was arrested by authorities in Hong Kong and subsequently extradited to the United States. On June 25, 2007, Asprah appeared in the District of Nevada but requested that her initial appearance be continued to the following day, June 26, 2007. (Opp'n (#116) at 2.) On June 26, 2007, Asprah's initial appearance in the District of Nevada was held before Judge Peggy A. Leen. (Id.) The matter was then continued until July 30, 2007 to join codefendant Celestina Aguilar, who was arrested in Las Vegas several months before Asprah was extradited to the United States from Hong Kong. (Id.) The period of time from the initial appearance held on June 26, 2007, to July 30, 2007, amounts to thirty-three (33) days.

On July 20, 2007, the parties filed a Joint Stipulation (#63) seeking a continuance until September 10, 2007. On July 23, 2007, the Court approved the Stipulation, and entered an Order (#64) issuing a continuance. In the Order, the Court concluded that the continuance sought was excludable under the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(A), 3161(h)(7) and 3161(h)(8)(A), when considering the factors under 18 U.S.C. §§ 3161(h)(8)(B). (Order (#64) at 5.) The matter was continued to September 10, 2007. (Id.)

On August 13, 2007, the Government filed a Motion to Continue the Trial Date (#73) and a Motion to Exclude Time Under the Speedy Trial Act (#74). Both motions set forth several arguments justifying continuance and exclusion of time under the Speedy Trial Act. In particular, the Government argued that the case is sufficiently complex in nature to merit the continuance and exclusion. The Government also argued that continuance and exclusion of time under the Speedy Trial Act were necessary due to its official request for foreign evidence made to the Department of Justice of International Affairs; specifically, records from foreign bank accounts located in the Philippines and Denmark. (Mot. (#73) at 2; Mot. (#74) 3, 4, 6, 7.) Finally, the Government argued

3

for continuance and exclusion because it was still attempting to locate the third codefendant, Emmanual Aguillar.

The Court held a hearing to address the motions on August 28, 2007. Following the arguments of counsel for the Government and counsel for codefendants Asprah, Aguilar and Pagunuran, the Court granted both motions and made findings on the record that the time was excludable under the Speedy Trial Act. (Minutes of Proceedings (#82).) Accordingly, the September 10, 2007, trial date was continued until November 26, 2007. (Id.) A status conference was set for October 30, 2007, for the government to advise the Court on its progress in obtaining the relevant foreign evidence. (Id.; see also Opp'n (#116) at 2.)

On October 30, 2007, the Government advised the Court that the records requested by the letters rogatory had not yet been received and requested another continuance. (Minutes of Proceedings (#90).) The Court granted the Government's request and made further findings on the record that the time was excludable under the Speedy Trial Act. (Id.) The trial date was continued until February 25, 2008, and a status hearing was set for January 22, 2008, for the government to advise the Court on its progress in obtaining foreign evidence from the Philippines and Denmark. (Id.; see also Opp'n (#116) at 2.)

On January 11, 2008, Asprah filed the instant Motion to Dismiss (#103). At the January 22, 2008, status conference, the Government provided the Court with an update regarding its efforts to obtain foreign evidence. (Am. Minutes of Proceedings (#112).) Because the foreign evidence sought by the Government had not yet been obtained, the Government requested a continuance until May 2008. (Id.) The Court granted the continuance and excluded the time from February 26, 2008, to May 19, 2008, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(9). ( Id.; see also Order (#114).) The matter is currently set for jury trial on May 19, 2008. (Order (#114).)

**II. Discussion**

Upon review of Defendant Asprah's Motion to Dismiss (#103), the Court finds that Defendant not only seeks to have the action dismissed should further continuance be requested, but

4

also includes language challenging the Court's previous rulings for continuance and exclusion of time under the Speedy Trial Act. Specifically, Defendant argues that the Government's earlier requests for continuance and to exclude time were based on incorrect facts and law, were legally deficient, and that "Judge Dawson did not evaluate all of the factors required to support an exclusion of time pursuant to the Speedy Trial rights of the Public and the Defendant." (Def.'s Reply at 1, 3.) Defendant argues that the Court was misled by the Government in failing to properly cite 18 USC § 3292, which requires that the request for foreign evidence must be filed before indictment. Defendant argues that the request for foreign evidence in this case was not made until seven months after indictment, and thus that the Government's attempt to continue the trial date further is "dilatory and abusive". (Id. at 2.)

**A. Speedy Trial Act**

Upon review, the Court finds that its earlier decision to grant the Government's Motion for Continuance, and to Exclude time was proper under 18 USC § 3161. 18 USC § 3161(h) sets forth several reasons for which a period of delay may be excluded when computing the time within which an indictment must be filed, or in computing the time within which the trial of any offense must commence. Listed among the reasons are: "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161 (h)(B)(7). The statute also provides that "any period of delay resulting from a continuance granted by any judge" may be excluded if the judge can articulate on the record, either orally, or in writing, that the continuance was granted on the basis of his findings that "the ends of justice served by [granting a continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161 (h)(8)(A). According to the statute, some factors to be taken into consideration when making this determination are:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. 3161 (h)(8)(B).

A review of the transcript of the August 28, 2007, hearing demonstrates that the Court carefully considered several factors, including those listed under 18 U.S.C. § 3161(h)(8)(B) in making its determination that the ends of justice were best served by granting the Government's continuance.

The arguments put forward in Defendant Asparah's immediate Motion to Dismiss and Reply mirror the arguments contained in codefendant Paganuran's Opposition to the Government's Motion to Continue (#81) filed on August 27, 2008.  Contrary to Defendant's current contention that "the Court's prior order excluding time is not supported by legal authority . . . [because] no required balancing was conducted, the record demonstrates that the Court indeed did take Defendant Asprah and Pagunuran's arguments under advisement, did consider the factors set forth in 18 U.S.C. § 3161 (h)(8)(B), and only after doing so made its determination that the ends of justice were best served by granting the Government's continuance, and excluding the delay caused by said continuance under the Speedy Trial Act.  (See Def.'s Mot. to Dismiss at 5.)

At the hearing on August 28, 2007, the Government explained that its delay in filing the Mutual Legal Assistance Treaty (MLAT) request for foreign bank records was purposeful—in attempt to avoid the dissemination of confidential information and to safeguard its ongoing investigation.[1] The Government also indicated that they delayed in filing the MLAT request because the Defendants had represented that they wanted to cooperate with the investigation—according to the Government however, said cooperation did not occur.

Upon reviewing the parties' Motions and Responses, and upon hearing the parties' arguments, at the August 28, 2007, hearing, the Court found that a continuance was appropriate and that the time was excludable under 18 USC § 3161 because the case is sufficiently complex, as had been previously determined by the Magistrate Judge. The Court further found that a continuance was warranted and that the delay was excludable because "there is foreign evidence that must be obtained pursuant to the MLAT treaty," and that the Government "did not act in a dilatory fashion in seeking [the foreign] evidence through the procedures . . . available." (See Transcript of Hearing at 27.) The Court further found that because Defendant Paganuran was represented to have contacts with officials at high levels in the Philippines, the Government's request of the evidence at an earlier time could have imperiled the investigation. (Id.) Furthermore, the Court found that the absence of Emmanual Augilar warranted a continuance, because his absence "would require [the] Court to retry the case at such a time as he is arrested if it went forward on September 10th." (Id.)

Furthermore, though not a factor in making its determination here, the Court notes that Defendant Asprah has failed to raise the immediate arguments at previous hearings, and that in her

---

[1] Specifically, the Government noted that it purposefully delayed in filing its motion for exclusion until after the MLAT request had been sent because the MLAT request represented the Government's official demand for foreign evidence. Furthermore, the Government explained that the MLAT request was not sent prior to Defendants' arrest because the DEA had been advised by the Government's counterparts in the Philippines not to request the foreign bank account information because of corruption in the Philippines, and because Defendants admittedly had "high-placed banking contacts" who, if made aware of the investigation could have "tipped off" Defendants. (See Transcript of Hearing at 8.) Additionally, Defendant Pagunuran allegedly had represented to the Government's confidential informants that she had previously laundered money for a U.S. designated terrorist organization. Due to the nature of this information, the Government felt it necessary to safeguard the investigation because of its potential terrorist ties, and therefore, could not send an MLAT prior to Defendants' arrest. (Id. at 9)

7

immediate Motion to Dismiss, Defendant acknowledges that "the Court has found good cause" for the Government's previous requests for continuances.  (See Def.'s Mot. to Dismiss at 4.)  Here, though the Court is sympathetic to Defendant Asprah's concern regarding her ongoing detention, because of the nature of the case, and for the reasons listed above, the Court maintains its finding that the ends of justice have been best served in granting the Government's motions for continuance an exclusion of time under the Speedy Trial Act.  The Court however maintains its responsibility under 18 U.S.C. § 3161 to consider and weigh carefully the Defendant's interests in a speedy trial, and therefore will continue to conscientiously do so should future Motions for continuance be filed.

### III. Conclusion

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Failure to Provide a Speedy Trial (#103) is **DENIED**.

DATED this 14th day of April 2008.

_____
Kent J. Dawson
United States District Judge